## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RASHAN WILLIAMS**                    **CIVIL ACTION**

**versus**                                          **NO. 06-0224**
                                                        **c/w 06-0344**

**BURL CAIN, WARDEN**                   **SECTION: "A" (6)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Rashan Williams, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On December 2, 1999, he was found guilty of second-degree murder in violation of Louisiana law.[2]  On January 24, 2000, his motions for post-verdict judgment of acquittal and new trial were denied, and he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[3]  On November 14, 2001, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[4]  Petitioner then filed with the Louisiana Supreme Court a related writ application which was denied on January 24, 2003.[5]  His motion seeking reconsideration on that decision was denied on September 5, 2003.[6]

On August 11, 2003, petitioner filed with the state district court an application for post-conviction relief.[7]  That application was denied on May 14, 2004.[8]  Relief was likewise denied

---

[2] State Rec., Vol. VI of VIII, transcript of December 2, 1999, p. 225; State Rec., Vol. II of VIII, minute entry dated December 2, 1999; State Rec., Vol. II of VIII, jury verdict form.

[3] State Rec., Vol. VI of VIII, transcript of January 24, 2000; State Rec., Vol. II of VIII, minute entry dated January 24, 2000.

[4] State v. Williams, No. 2001 KA 0457 (La. App 1st Cir. Nov. 14, 2001) (unpublished); State Rec., Vol. VII of VIII.

[5] State v. Williams, 836 So.2d 35 (La. 2003) (No. 2002-KO-0144).

[6] State v. Williams, 852 So.2d 1018 (La. 2003) (No. 2002-KO-0144); State Rec., Vol. I of VIII.

[7] State Rec., Vol. I of VIII.

[8] State Rec., Vol. I of VIII, Order dated May 14, 2004.

by the Louisiana First Circuit Court of Appeal on August 23, 2004,[9] and the Louisiana Supreme Court on November 28, 2005.[10]

On December 27, 2005, petitioner filed a federal application for *habeas corpus* relief which was docketed as Civil Action No. 06-0224.  In support of that application, he asserted the following claims:

1.      The prosecution withheld evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny;

2.      The identification procedure was unduly suggestive; and

3.      Petitioner received ineffective assistance of counsel.[11]

On January 11, 2006, petitioner filed a supplemental petition which was separately docketed as Civil Action No. 06-0344.[12]  Although that petition listed no claims for relief, it was subsequently supplemented by a brief in which petitioner asserted the following claims:

1.      The trial judge erred in allowing the prosecutor to systematically exclude African-Americans from the jury;

2.      The trial judge erred in refusing to allow the defense to impeach the credibility of one of the state's witnesses;

---

[9] State *ex rel.* Williams v. Cain, No. 2004 KW 1299 (La. App. 1st Cir. Aug. 23, 2004) (unpublished); State Rec. Vol. I of VIII.

[10] State *ex rel.* Williams v. State, 916 So.2d 131 (La. 2005) (No. 2004-KH-2580); State Rec., Vol. I of VIII.

[11] Rec. Doc. 3 (06-0224).

[12] Rec. Doc. 5 (06-344)

3.      The trial judge erred in making a disparaging comment, in the presence of the jury, regarding her opinion of the state's evidence;

4.      The trial judge erred in denying petitioner's motion for mistrial based on that comment;

5.      The trial judge erred in denying petitioner's motion for new trial based on that comment; and

6.      The trial judge erred in denying petitioner's motion for a mistrial and new trial based on the prosecutor's improper argument.[13]

On January 9, 2007, the two federal civil actions were consolidated.[14]

The state has responded to both petitions.  Although the state does not challenge either the timeliness of the petitions or petitioner's exhaustion of his state court remedies, the state argues that the claims have no merit.[15]

Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that

---

[13]  Rec. Doc. 8 (06-0344); Rec. Doc. 26 (06-0224).

[14]  Rec. Doc. 7 (06-0344); Rec. Doc. 16 (06-0224)

[15]  Rec. Doc. 13 (06-0224); Rec. Doc. 31 (06-0224).

the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

On July 11, 1998, the victim, Keaton Morris, his brother, Terrance Morris, and friends, Vernon Tate and Elvin Pigott, went to the Silver Slipper Bar in Varnado, Louisiana. They arrived around 1:00 a.m. and went inside where there were approximately twenty people. After Keaton, Terrance, and Elvin sat down, another man, Travon Stokes, approached them and asked their names and where they lived. The men gave Stokes the information. Subsequently, a woman came up to the men and told them they should leave or there would be trouble. The three men got up to leave and walked outside. Terrance went back inside to tell Vernon they were leaving. When Terrance returned outside, he stood next to Keaton in the doorway. Suddenly, Terrance heard shots coming from the right side of the building. He heard a second round of shots and ran. While hiding behind a vehicle in the parking lot, Terrance saw a man across the lot from him. Terrance identified this man, who was wearing a jacket with the hood pulled over his head and a bandana over his nose and mouth, as defendant. He saw that defendant was holding a gun, which apparently had jammed.

Numerous other persons who were at the bar at the time of the shooting testified at trial and identified defendant as the man they had seen wearing a hooded jacket and hiding a gun. Elvin Pigott testified that after he left the bar and was standing outside, he saw defendant, in a hooded shirt, point and shoot a gun. Latorious Levy also identified defendant as the man she saw wearing a hooded jacket and holding a gun as he walked around the building. Laura Lee stated that as she left the bar, she saw defendant standing between cars in the parking lot. He was wearing a hooded jacket, which she had previously seen Travon Stokes wearing in the bar, and a bandana on his face. He pointed and shot a gun several times. According to Lee, she was able to identify defendant from his big eyes. Tiffany Libby testified that although she never saw defendant with a gun, she observed him putting on a hooded shirt and a bandana. Martha Barker testified that she was in the parking lot when she was pushed to the side by a man wearing a hooded jacket and a bandana. The man raised a gun and fired three shots at a boy. After seeing his eyes, Barker was able to identify this man as the defendant. Several of the

–  6  –

witnesses were also injured by stray bullets and treated at a nearby hospital.

At trial, defendant testified that he was not at the bar at the time of the shooting. According to defendant, he had been at the bar shortly before the shooting but had been driven home by his cousin, David Bickham. Defendant explained that his stomach was hurting and David, who had given him a ride to the bar, drove him home. After being home for about forty-five minutes, defendant heard David return. Defendant went outside and saw some friends, who were talking about the shooting at the bar. Defendant denied wearing the hooded jacket and bandana and shooting the firearm. David Bickham corroborated defendant's testimony that he received a ride home before the shooting began.

There was testimony from a forensic scientist that the thirteen bullet casings found at the scene were fired from the same gun. The scientist was unable to determine if one of the bullets had jammed. According to the record, the gun was never recovered. The pathologist testified that the victim had four gunshot wounds and that his death was the result of a wound to the chest.[16]

<u>Brady Claim</u>

Petitioner's first claim is that the prosecution withheld exculpatory evidence, specifically a police radio log, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny. When this claim was asserted in the state post-conviction proceedings, the state district court denied relief, holding:

The defendant alleges that the 911 radio log was not provided to him in discovery. The State disputes this. Further, the <u>Marshall</u> case [660 So2d 819 (La 1995), and the <u>Brady</u>, <u>Agurs</u>, <u>Bagley</u>, and <u>Kyles</u> cases discussed therein] provide the standard upon which this decision must be based: whether, in the absence of the evidence, the defendant received a fair trial; that is, a trial resulting in a verdict worthy of confidence. The suppression of the evidence must undermine confidence in the trial outcome. The defendant was tried

---

[16] <u>State v. Williams</u>, No. 2001 KA 0457, at pp. 2-3 (La. App 1st Cir. Nov. 14, 2001) (unpublished); State Rec., Vol. VII of VIII.

> and convicted by a jury.   The jury was convinced beyond a reasonable doubt of his guilt.  The First Circuit upheld the conviction [2001 KA 0457] and the Supreme Court denied writs [2002KO144]. For these reasons, and those discussed in the Answer filed by the State, this Claim is found to be without merit.[17]

The Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief without assigning reasons.[18]

The AEDPA places severe limitations on a federal court's review of state court decisions rejecting such a claim.  The United States Fifth Circuit Court of Appeals has cautioned:

> Under AEDPA, [a federal court] do[es] not decide *de novo* whether a state prisoner has sufficiently proven a <u>Brady</u> violation. <u>See Yarborough v. Alvarado</u>, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a de novo matter."); <u>Neal v. Puckett</u>, 286 F.3d 230, 236 (5th Cir. 2002) (en banc) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect.").  Rather, [a federal court] decide[s] whether the state court's <u>Brady</u> determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law.  <u>Busby v. Dretke</u>, 359 F.3d 708, 717 (5th Cir. 2004).

<u>Dickson v. Quarterman</u>, 462 F.3d 470, 477-78 (5th Cir. 2006).

The federal law regarding <u>Brady</u> claims is well established.  The United States Supreme Court has held:

---

[17]  State Rec., Vol. I of VIII, Order dated May 14, 2004.

[18]  <u>State *ex rel.* Williams v. Cain</u>, No. 2004 KW 1299 (La. App. 1st Cir. Aug. 23, 2004) (unpublished); <u>State *ex rel.* Williams v. State</u>, 916 So.2d 131 (La. 2005) (No. 2004-KH-2580); State Rec., Vol. I of VIII.

> A <u>Brady</u> violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the <u>Brady</u> duty extends to impeachment evidence as well as exculpatory evidence, and <u>Brady</u> suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.

<u>Youngblood v. West Virginia</u>, 547 U.S. 867, 869-70 (2006) (per curiam) (internal citations and quotation marks omitted).

Therefore, to prevail on this claim, petitioner must first show that the state in fact suppressed the disputed evidence. However, in this case, the state contends that the police radio log was provided to the defense,[19] and petitioner has offered no evidence, such as an affidavit from defense counsel, in support of his bald allegation that the report was withheld. That failure to provide any evidence whatsoever on the initial prong of the <u>Brady</u> inquiry is, in and of itself, fatal. <u>Watson v. Cain</u>, Civ. Action No. 06-613, 2007 WL 1455978, at *7 (E.D. La. May 17, 2007); <u>Abron v. Cain</u>, Civ. Action No. 05-876, 2006 WL 2849773, at *10 (E.D. La. Oct. 3, 2006); <u>Harris v. United States</u>, 9 F.Supp.2d 246, 275 (S.D.N.Y. 1998) ("[T]he government does not bear the burden of establishing that documents were not withheld; it is [petitioner's] burden to prove that the government failed to disclose evidence favorable to [him].), <u>aff'd</u>, 216 F.3d 1072 (2nd Cir. 2000); <u>see also</u> <u>United States v. Avellino</u>, 136 F.3d 249, 261 (2nd Cir. 1998); <u>Cruz v. Artuz</u>, 97-CV-2508, 2002 WL 1359386, at *14 (E.D.N.Y. June 24, 2002).

In any event, irrespective of whether petitioner's claim can survive the first prong of the <u>Brady</u> inquiry, it is evident that it cannot survive the second prong's requirement that he

---

[19] State Rec., Vol. I of VIII, District Attorney's Answer to Petition for Post Conviction Relief, p. 1.

establish that the allegedly suppressed evidence was "materially favorable to the accused." Youngblood, 547 U.S. at 869.  With respect to that issue, it must be remembered that it is not enough that the evidence might have been *helpful* to the defense.  See, e.g., Kyles v. Whitley, 514 U.S. 419, 436-37 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.").  Rather, the withheld evidence must have been "material" in the constitutional sense.  On that point, the United States Supreme Court has held:

> Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.  The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

Youngblood, 547 U.S. at 870 (internal citations and quotation marks omitted).  For the following reasons, the Court concludes that the police radio log simply does not rise to that level.

The log in question reflects that on July 11, 1998, at 2:05 a.m., less than hour before the 911 call in this case, Phyllis Sumrall called 911 and reported that three black males wearing bandanas hit her on the head and shot "Mo."[20]  Petitioner contends that this information was exculpatory because it could lead one to conclude that the instant murder was committed not by him

---

[20] A copy of the police radio log is attached to petitioner's federal application.  Rec. Doc. 3 (06-0224).

but rather by bandana-wearing "'bandits' roaming the Washington Parish area" around the same time.[21]

The state courts rejected that contention, as does this Court.  There is simply no basis whatsoever for concluding that the shooting of "Mo" was in any way related to the shooting in this case.  There is no indication that there was any connection between "Mo" and instant victim or that the shootings were similar in any way other than the fact that the perpetrators wore bandanas.  That one similarity is hardly striking, in that criminals commonly use bandanas to hide their identities.  Moreover, the fact that there were two crimes on the same morning in the same parish committed by persons wearing bandanas is hardly remarkable or in any way puts the instant case in such a different light as to undermine confidence in the verdict.

In summary, this Court has found no support in the jurisprudence of the United States Supreme Court for the suggestion that <u>Brady</u> mandates disclosure of reports of unrelated crimes in different locations and circumstances based on the singular similarity of use of bandanas.  Therefore, petitioner has not demonstrated that the state court decision rejecting his <u>Brady</u> claim was contrary to, or involved an unreasonable application of, clearly established federal law.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

<u>Identification</u>

Petitioner's second claim is that the identification procedure was unduly suggestive.  When this claim was asserted in the state post-conviction proceedings, the state district court denied relief, noting:  "[T]he identification issue was resolved by the jury.  The jury convicted him based

---

[21]  Rec. Doc. 3, supporting memorandum, p. 10 (06-0224).

upon the testimony of the witnesses at trial.  Five witnesses identified the defendant and placed him at the crime scene."[22]  The Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief without assigning reasons.[23]

Petitioner's claim is somewhat novel in that he is not contending that his in-court identification was tainted by suggestive *pretrial* procedures; rather, his claim is that his rights were violated by the state's *failure to use any pretrial identification procedures*, such as a photographic lineup, to ascertain the reliability of the in-court identifications.  However, petitioner had no constitutional right to a pretrial lineup, and the in-court identifications were not rendered unconstitutional simply because no such pretrial procedures were utilized.  United States v. Brown, 699 F.2d 585, 593-94 (2nd Cir. 1983); United States v. McGhee, 488 F.2d 781, 786 (5th Cir. 1974); Hankins v. Smith, No. 03 Civ. 5404, 2008 WL 4601000, at *3 (S.D.N.Y. Oct. 15, 2008).

In support of his claim, petitioner cites Neil v. Biggers, 409 U.S. 375 (1972), in which the United States Supreme Court addressed the scope of the due process protection against the admission of evidence deriving from suggestive pretrial identification procedures.  Because there were no pretrial identifications in the instant case, Biggers is arguably inapposite.  That said, the Court is aware that several federal courts, including the United States Fifth Circuit Court of Appeals, have nevertheless used the Biggers analysis when considering similar claims in cases where there were no pretrial identifications.  United States v. Rogers, 126 F.3d 655 (5th Cir. 1997); see also

---

[22]  State Rec., Vol. I of VIII, Order dated May 14, 2004.

[23]  State *ex rel.* Williams v. Cain, No. 2004 KW 1299 (La. App. 1st Cir. Aug. 23, 2004) (unpublished); State *ex rel.* Williams v. State, 916 So.2d 131 (La. 2005) (No. 2004-KH-2580); State Rec., Vol. I of VIII.

Parson v. Keith, No. CIV-07-994, 2008 WL 2568385, at *13 n.16 (W.D. Okla. June 24, 2008) (and

the cases cited therein).  Therefore, out of an abundance of caution, the Court will further address

petitioner's claim.[24]

> In Biggers, the United States Supreme Court held:
>
> [T]he central question [is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive.  As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Biggers, 409 U.S. at 199.

---

[24]  The Court is, of course, aware that a federal *habeas* petitioner is entitled to relief only if he establishes that state court's decision rejecting such a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Because the Supreme Court has never applied the Biggers analysis in cases where pretrial identification procedures were not employed, a state court's failure to do so in such a case cannot be considered contrary to Supreme Court precedent.  Kennaugh v. Miller, 289 F.3d 36, 44 (2nd Cir. 2002); Parson, 2008 WL 2568385, at *13.  However, "[a] decision involves an unreasonable application of Supreme Court precedent if it 'unreasonably extends a legal principle from [Supreme Court precedent] to a new context where it should not apply *or unreasonably refuses to extend that principle to a new context where it should apply*.'"  Oliver v. Quarterman, 541 F.3d 329, 334 (5th Cir. 2008) (quoting Williams v. Taylor, 529 U.S. 362, 407 (2000)) (emphasis added); see also Goodrum v. Quarterman, 547 F.3d 249, 256 (5th Cir. 2008).  In failing to extend Biggers to such a situation, a state court *arguably* could be said to have unreasonably applied Supreme Court precedent.  Parson, 2008 WL 2568385, at *13; but see Kennaugh, 289 F.3d at 44-48 (2nd Cir. 2002) (finding that the Biggers analysis is not specifically required, but that the general principles of Manson v. Brathwaite, 432 U.S. 98 (1977), which require exclusion of identifications that entail a "very substantial likelihood of irreparable misidentification," is applicable) .

In the instant case, seven witnesses testified that they saw petitioner at the bar on the night of the incident, observed him with a gun, and/or actually witnessed the shooting: Elvin Pigott, Latorious Levy, Lorraine Bell, Laura Lee, Tiffany Libby, Claude Harris Varnado, and Martha Barker. All of those witnesses except for Levy and Barker knew petitioner *prior* to the incident. Perhaps because of that fact, the parties did not question the witnesses in any depth regarding the Biggers factors relating to their degree of attention, the accuracy of their prior descriptions, the level of their certainty, or the lengthy amount of time between the crime and the trial. In fact, the only Biggers factor addressed to any significant degree was the opportunity they had to view the petitioner at the time of the crime. Nevertheless, the scant information which was provided on these issues is recounted below.

Pigott testified that, prior to the incident, he was already acquainted with petitioner.[25] Pigott further testified that, at the time of the shooting, the sky was dark but the area was illuminated by outside lights and he was able to see petitioner's face.[26]

Levy likewise testified that there were lights outside of the bar.[27]

Bell testified that she had known petitioner for approximately two years.[28] She further testified that, on the night of incident, she talked to petitioner in the bar.[29]

---

[25]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, pp. 16 and 33.

[26]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, pp. 25 and 29.

[27]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, p. 75.

[28]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, p. 79.

[29]  State Rec., Vol. V of VIII, transcript of December 1, 1999, p. 84.

Lee testified that she had known petitioner for a couple of months prior to the shooting and had a baby with him.[30] She testified that, at the time of the shooting, petitioner's face was partially covered with a bandanna but that she still recognized his eyes; further, she testified that there was no question in her mind that it was petitioner who she saw shoot the gun.[31] She likewise noted that there were lights outside of the bar.[32]

Libby testified that she met petitioner a couple of days before the shooting.[33] She saw and briefly spoke with him outside of the bar on the night of the shooting.[34]

Varnado testified that he was acquainted with petitioner and saw him at the bar on the night of the incident.[35]

Barker testified that she saw petitioner with the gun. She noted that she was close enough to touch him and that there was enough light for her to see him. Although petitioner was wearing a bandana at the time of the shooting, she was able to recognize him in court by his eyes.[36]

Despite the lack of detailed information on some of the Biggers factors, this Court has no hesitation in finding that the in-court identifications were nevertheless reliable based on the

---

[30] State Rec., Vol. V of VIII, transcript of December 1, 1999, pp. 94-95 and 111-12.

[31] State Rec., Vol. V of VIII, transcript of December 1, 1999, pp. 100-01, 103, and 107-08.

[32] State Rec., Vol. V of VIII, transcript of December 1, 1999, p. 108.

[33] State Rec., Vol. V of VIII, transcript of December 1, 1999, p. 119.

[34] State Rec., Vol. V of VIII, transcript of December 1, 1999, p. 120-21.

[35] State Rec., Vol. V of VIII, transcript of December 1, 1999, p. 139-41.

[36] State Rec., Vol. V of VIII, transcript of December 1, 1999, pp. 174-75, 183, 185, and 190.

totality of the circumstances.  Central to that finding is the fact that five of the witnesses *knew* petitioner.  A witness's prior acquaintance with the accused renders negligible the risk of misidentification.  See United States v. Hefferon, 314 F.3d 211, 219 (5th Cir. 2002); Hetzel v. Cowan, 518 F.2d 851 (6th Cir. 1975); United States v. Beckham, 505 F.2d 1316, 1319 (5th Cir. 1975); Weber v. Cain, Civ. Action No. 06-1055, 2008 WL 3876399, at *21 (E.D. La. Aug. 20, 2008).  Where, as here, an identification is based on prior acquaintance, the issue is less one of *reliability* than of *credibility*, and doubts as to credibility are properly left to the jury.  United States v. Lewis, No. 99-31320, 2001 WL 184585, at *3 (5th Cir. Jan. 29, 2001); United States v. Fernandez-Roque, 703 F.2d 808, 814 (5th Cir. 1983).

   In light of these circumstances, as well as the sheer number of eyewitnesses in this case, there is no likelihood of misidentification in this case.  Petitioner has therefore failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects the claim.

Ineffective Assistance of Counsel

   Petitioner's third claim is that he received ineffective assistance of counsel.  When this claim was asserted in the state post-conviction proceedings, the state district court denied relief, stating:

> [T]he defendant claims ineffective assistance of counsel.  Under Strickland [446 US 668; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984)], the defendant must show a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different.  The Court

does not find that the particulars argued by the defendant were prejudicial to this extent.  Thus the Court finds the claim to be without merit.[37]

Without assigning additional reasons, the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court likewise denied relief.[38]

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision denying petitioner's ineffective assistance of counsel claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  For the following reasons, the Court finds that neither of those conditions is met and that, therefore, this federal court should defer to the state court's ruling.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Id. at 697.  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Id. at 697.  Petitioner bears the burden of proof when asserting such a claim and "must demonstrate, by a preponderance

---

[37] State Rec., Vol. I of VIII, Order dated May 14, 2004.

[38] State *ex rel.* Williams v. Cain, No. 2004 KW 1299 (La. App. 1st Cir. Aug. 23, 2004) (unpublished); State *ex rel.* Williams v. State, 916 So.2d 131 (La. 2005) (No. 2004-KH-2580); State Rec., Vol. I of VIII.

of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).

　　　　　To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

　　　　　In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

In the instant case, petitioner contends that his trial counsel was ineffective in numerous respects. The Court will address each of those contentions.

Petitioner's first contention is that his counsel was ineffective in failing to adequately investigate the case. Specifically, petitioner contends that his counsel "never followed up on the witnesses petitioner informed him about, who would've been able to testify concerning his whereabouts at the time of the shooting."[39]  However, petitioner provides no elaboration of or support for this claim and, as a result, he falls far short of meeting his burden of proof for the following reasons.

A petitioner asserting a claim for inadequate investigation bears the burden to provide *factual support* as to what further investigation would have revealed.  See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005).  In the instant case, petitioner does not even allege what exculpatory evidence, other than the purported unidentified alibi witnesses, might possibly have been revealed by further investigation, much less provide factual support for those allegations.

Further, as to those supposed alibi witnesses, petitioner again fails to meet the requisite burden of proof. It is clear that "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).  Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the

---

[39]  Rec. Doc. 3, supporting memorandum, p. 16 (06-0224).

witness would have testified at trial.'" Id. (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  In connection with the instant federal application, petitioner as not even identified the purported alibi witnesses much less provided any evidence, such as affidavits from those witnesses, showing that they in fact could have provided him with an alibi and would have testified to that effect at trial.

Petitioner's second contention is that his counsel was ineffective in "failing to effectively move for a suppression of the identification."[40]  Specifically, petitioner alleges that counsel should have moved for immediate dismissal of the charge during a suppression hearing on December 18, 1998, when the prosecutor stated that no eyewitness identification had been made.[41]  However, the court minutes do not reflect that a hearing was held on that date and there is no transcript of a hearing on that date.  Further, in any event, there were in fact numerous eyewitnesses in this case.  Accordingly, the Court finds no basis for this claim.

Petitioner's third contention is that his counsel was ineffective in failing to adequately cross-examine two of the state's witnesses, Laura Lee and Tiffany Libby.  Specifically petitioner claims that Lee and Libby had told him that "some detective coerced and coached them into making these statements against petitioner."[42]  Petitioner alleges that he told this to his counsel and provided him with a letter written by Libby; however, counsel neither cross-examined Lee and Libby on this issue nor introduced the letter into evidence.  This claim fails for two reasons.

---

[40]  Rec. Doc. 3, supporting memorandum, p. 15 (06-0224).

[41]  Rec. Doc. 3, supporting memorandum, p. 16 (06-0224).

[42]  Rec. Doc. 3, supporting memorandum, p. 17 (06-0224).

First, again, petitioner has provided no evidentiary support for his claim. For example, he has not provided affidavits from either Lee or Libby corroborating the allegations, a copy of the purported letter, or an affidavit from counsel corroborating the allegation that he was informed of this information. Petitioner's bald and self-serving statements without any evidentiary support are simply insufficient to meet his burden of proof.

Second, in any event, it is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F.Supp.2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689. In the instant case, defense counsel in fact vigorously cross-examined Lee and Libby on several issues including the identification of petitioner. Even if he had been told of petitioner's allegations of coercion and coaching, a fact which has not been established, there are several reasons he might have chosen to avoid the issue. For example, he might have (1) felt that a narrowly focused cross-examination on the reliability of the identifications would be more effective, (2) feared the witnesses would become more hostile in their testimony if the issue were broached, or (3) feared that the jurors would be alienated by unsupported insinuations of police misconduct. Petitioner's contentions are simply insufficient to overcome the presumptions

regarding the soundness of counsel's trial strategy, and petitioner certainly has not shown that he was prejudiced as a result.

Petitioner's fourth contention is that his counsel was ineffective failing to object comments made during the prosecutor's closing argument. Specifically, petitioner argues that an objection should have been lodged when the prosecutor insinuated petitioner was a gang member and that the shooting was gang-related. At trial, petitioner testified that he was formerly in a gang in California and described the gang lifestyle, including the inherent skirmishes over gang territories; however, he testified that he had not been an active gang member for several years.[43] During closing argument, the prosecutor made no *express* references to gang activity; however, he arguably obliquely referenced that prior testimony by indicating that the victim in this case was killed because he was in a "hood" where he did not belong. The prosecutor also argued: "You heard where he came from and what he is. Guess what? You don't get out of those things. You get jumped in them, you don't get out. Ain't no ex."[44]

It is clear that "[a] decision not to object to a closing argument is a matter of trial strategy." Drew v. Collins, 964 F.2d 411, 423 (5th Cir. 1992); see also Spicer v. Cain, Civ. Action No. 07-3770, 2007 WL 4532221, at *10 (E.D. La. Dec. 19, 2007). The United States Supreme Court has held that federal *habeas* courts are not to second-guess counsel's strategic decisions through the distorting lens of hindsight but instead are to employ a strong presumption that the conduct falls within a wide range of reasonable assistance. Strickland, 466 U.S. at 689; see also Burnett v.

---

[43] State Rec., Vol. VI of VIII, transcript of December 2, 1999, pp. 71-72 and 89-94.

[44] State Rec., Vol. VI of VIII, transcript of December 2, 1999, pp. 141-42.

Collins, 982 F.2d 922, 930 (5th Cir. 1993); Rios-Delgado v. United States, 117 F.Supp.2d 581, 589

(W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, does not rise to the level

of constitutionally deficient performance.  In cases where an accused complains that counsel was

ineffective because he did not object to something ..., the courts grant significant deference, as such

actions fall squarely within the ambit of trial strategy.").

       Even if the objection at issue might have had a chance of succeeding, defense counsel

was still allowed to make a strategic choice to forego such an objection to avoid antagonizing the

jury.  See Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir. 1992); see also Spicer, 2007 WL 4532221,

at *10.  Further, the proposed objection would have invited the jurors to focus their attention on the

prosecutor's closing argument, perhaps thereby inflating its importance in the jurors' minds.

Counsel can hardly be deemed to have performed ineffectively in choosing to avoid that unnecessary

risk.  Spicer, 2007 WL 4532221, at *10.

       Finally, even if counsel's  failure to object could be considered deficient

performance, petitioner clearly has not shown prejudice.  In light of the considerable evidence in this

case, including the testimony of *seven* eyewitnesses, and the cautionary charge instructing jurors that

arguments are not evidence,[45] petitioner simply has not shown that there is a reasonable probability

---

[45]  The jurors were instructed:

       The statements and arguments made by the attorneys are not evidence.  In the
opening statements the attorneys were permitted to tell you the facts they expected
to be proven.  In closing arguments the attorneys were permitted to present for your
consideration their contentions regarding what the evidence has shown or not shown
and what conclusions they think may be drawn from the evidence.
       The opening statements and the closing arguments are not to be considered
as evidence.

State Rec., Vol. VI of VIII, transcript of December 2, 1999, p. 208.

that the result of the proceeding would have been different if only counsel had made the proposed objections to the prosecutor's closing argument.

In connection with the same claim, petitioner also contends that his counsel was ineffective in failing request an admonishment or mistrial after petitioner referenced in his closing argument a California police report regarding an unrelated conviction.  On direct examination, petitioner related the circumstances leading to his arrest on the California offense.[46]  On cross-examination, petitioner acknowledged that the police report recounted a different version of the incident but stated that "[t]he facts that are in this report is false."[47]  During his rebuttal argument, the prosecutor summarized petitioner's version of the events leading to that arrest.  Defense counsel objected, arguing that the prosecutor was referring to matters not in evidence.[48]  The trial judge implicitly overruled that objection, noting that the prosecutor was only summarizing petitioner's testimony on direct and cross-examination.[49]  That ruling was upheld on appeal.[50]

Because defense counsel's objection was found to have no merit and overruled, any motion for an admonition or mistrial on the same basis would likewise have been denied.  Counsel is not considered ineffective for failing to assert a baseless and frivolous motion.  See, e.g., Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press

---

[46]  State Rec., Vol. VI of VIII, transcript of December 2, 1999, pp. 64-70.

[47]  State Rec., Vol. VI of VIII, transcript of December 2, 1999, p. 86.

[48]  State Rec., Vol. VI of VIII, transcript of December 2, 1999, p. 195.

[49]  State Rec., Vol. VI of VIII, transcript of December 2, 1999, pp. 195-97.

[50]  State v. Williams, No. 2001 KA 0457, at pp. 11-12; State Rec., Vol. VII of VIII.

a frivolous point."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Petitioner's fifth contention is that his counsel was ineffective in allowing the prosecution to present evidence concerning a pair of pants. At trial, Detective Lorenzo Rayford testified that, as part of the investigation, law enforcement officials searched for clothing that had been worn during the shooting. One of the items they recovered was a pair of blue pants found in a ditch several miles from the bar.[51] It is argued that defense counsel should have objected to this evidence because it was never established that the pants belonged to petitioner.

As an initial matter, the threshold for relevancy of evidence is a very low one: "'Relevant evidence' means any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. Code Evid. art. 401. Presumably, the purported relevance of this disputed evidence is that the discarded pants bolstered the reliability of the eyewitness testimony describing petitioner as wearing blue pants at the time of the shooting. Further, while the pants were not conclusively established as the ones used in the crime, such a showing is unnecessary. The Louisiana Supreme Court has held:

---

[51] State Rec., Vol. V of VIII, transcript of December 1, 1999, pp. 195-96.

> In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case; the lack of positive identification or a defect in the chain of custody goes to the *weight of the evidence rather than to its admissibility*.

State v. Sam, 412 So.2d 1082, 1086 (La. 1982) (emphasis added).

Nevertheless, even if there was in fact a basis for excluding the evidence regarding the pants, it does not necessarily follow that counsel was ineffective in failing to lodge an objection. Again, petitioner is quibbling over a matter of trial strategy which is not to be second-guessed through the distorting lens of hindsight. Here, counsel could have feared that, even if successful, such an objection might have focused the jurors' attention on what was a relatively inconsequential piece of evidence. Counsel cannot be deemed to have performed deficiently in choosing to avoid that unnecessary risk where he could, and did, simply challenge the reliability of the evidence in his closing argument.[52] Moreover, in any event, petitioner cannot establish the required prejudice to support his claim. In light of the considerable evidence of his guilt, petitioner is unable to show that the result of the proceeding would have been different if only his counsel had successfully objected to this evidence.

Petitioner's sixth contention is that his counsel was ineffective failing to object when the jury was allowed to view lab reports and other physical evidence during deliberations. Louisiana law provides that jurors generally are not permitted to have access to "written evidence"; however, objects and documents in evidence generally may be sent to the jury room during deliberations when a physical examination of that evidence is required to enable the jury to arrive at a verdict.

---

[52] State Rec., Vol. VI of VIII, transcript of December 2, 1999, pp. 168-70.

La.C.Cr.P. art. 793; <u>State v. Pooler</u>, 696 So.2d 22, 52-53 (La. App. 1st Cir. 1997).  The Louisiana

Supreme Court has explained:

> This Court has recognized that jurors may inspect physical evidence in order to arrive at a verdict, but they cannot inspect written evidence to assess its verbal contents.
>
> The general rule as expressed by C.Cr.P. 793 is that the jury is not to inspect written evidence *except* for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document.  For example, a jury can examine a written statement to ascertain or compare the signature, or to see or feel it with regard to its actual existence.  The legislature has made an express choice in this instance, and this court must follow the explicit prohibition of article 793, of jury access to written evidence during the deliberations, except for the sole purpose of physical examination.

<u>State v. Perkins</u>, 423 So.2d 1103, 1109-10 (La. 1982) (emphasis in original) (citations omitted).

Based on this limitation, the Louisiana Supreme Court has found that lab reports generally should

not be sent to jury room, although any error in that regard may be considered "inconsequential" if

the "documents, although necessary to the prosecution's case, were not directly pertinent to the issue

of [the particular] defendant's guilt or innocence."  <u>State v. Johnson</u>, 541 So.2d 818, 824-25 (La.

1989).

      The record is unclear as to whether the trial court in fact allowed the lab reports to

be taken to the jury room.  A minute entry states that the jury requested the lab reports and other

evidence, but the court's ruling on that request is not indicated.[53]  However, in light of the foregoing,

*if* jury was allowed to take the lab reports, that was arguably erroneous and defense counsel could

have objected.  Nevertheless, as previously noted, counsel is afforded great latitude in making

---

[53]  State Rec., Vol. VI of VIII, minute entry December 2, 1999, p. 4.

strategic decisions regarding such objections.  Without more, there is simply no basis for this Court to second-guess that decision and to find that the failure to object constituted deficient performance or prejudiced petitioner in any way.

In summary, the undersigned finds that state court identified the proper standard, i.e. the Strickland standard, and applied it in a reasonable manner in rejecting petitioner's ineffective assistance of counsel claims.  Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects those claims.

<u>Batson Claim</u>

Petitioner's fourth claim is that the trial judge erred in allowing the prosecutor to systematically exclude African-Americans from the jury.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [D]efendant argues that the trial court erred in allowing the prosecutor to systematically exclude African-American jurors from serving on the jury.  Defendant specifically argues that the trial court erred in not finding that he had established a prima facie case of discrimination and in not ordering the State to articulate racially neutral reasons for its peremptory challenges of African-Americans. The State argues that since it did not use all of its peremptory challenges to exclude African-Americans, defendant did not establish a prima facie case and it did not have to give non-racial reasons for the challenges.
>
> In **Batson v. Kentucky**, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the Equal Protection Clause forbids the use of peremptory strikes to challenge potential jurors solely on account of their race or the assumption that members of a certain race will be unable to impartially consider the case before them.  The Court concluded that

such discriminatory practices in the use of peremptory challenges denies a defendant equal protection of the law and unconstitutionally discriminates against the potential juror in violation of the Fourteenth Amendment.  The Supreme Court established a three-step analysis to be applied when addressing a claim that peremptory challenges were exercised in a manner that violates the Equal Protection Clause. First, the party challenging the peremptory strike must make a prima facie showing of discrimination in the use of the strike.  If a prima facie case is established, the burden shifts to the opposing party to articulate a gender or race-neutral explanation for the strike.  Then, the trial court must determine whether the party challenging the strike has carried the ultimate burden of proving purposeful discrimination. **Batson**, 476 U.S. at 93-98, 106 S.Ct. at 1721-23.

The combination of factors needed to establish a prima facie case are:  (1) the defendant must demonstrate that the prosecutor's challenge was directed at a member of a cognizable group; (2) the defendant must then show the challenge was peremptory rather than for cause; and (3) finally, the defendant must show circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of being a member of that cognizable group.  The **Batson** court also noted that relevant facts or circumstantial evidence of discriminatory intent include proof of a disparate impact and a "pattern" of strikes against jurors, as well as questions and statements made during *voir dire*.  **Batson**, 476 U.S. at 96-97, 106 S.Ct. at 1723.

In **State v. Green**, 94-0887 (La. 5/22/95), 655 So.2d 272, the Louisiana Supreme Court held that the sole focus of the **Batson** inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes.  The court outlined several factors that could lead to a finding that a prima facie case has been made:

> The defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden.  Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empanelled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination.

**Green**, 94-0887 at 24, 655 So.2d at 288 (footnotes and citations omitted).

In **State v. Givens**, 99-3518 (La. 1/17/01), 776 So.2d 443, the defendant raised a **Batson** challenge and alleged systematic exclusion of persons based upon gender.  The Louisiana Supreme Court concluded that the issue was whether the defendant presented a prima facie case of discrimination by the State in the exercise of peremptory challenges to strike all but one male from the jury, thereby requiring the prosecutor to articulate gender-neutral explanations for the challenges.  The court noted that while the record did not contain a full transcript of voir dire, it did contain the defendant's objections to the prosecutor's allegedly discriminatory strikes and reflected the prosecutor's pattern of striking male jurors.  In its analysis, the court reviewed the State's specific challenges, including back strikes and stated:

> This court recently addressed the same problem in the context of *Batson* challenges in *State v. Myers*, 99-1803 (La. 4/11/00), 761 So.2d 498, where we discussed the necessity for the trial judge to address these challenges when made by the defendant. In that case, the court explained that:

> > [T]he issue of purposeful ... discrimination in the use of peremptory challenges is a matter of utmost seriousness affecting not only the trial itself, but the perceived fairness of the judicial system as a whole.  The trial judge observes firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the ... composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold record.  Thus, when a *Batson* challenge is made, it is incumbent upon the trial judge to address the challenge, either by ruling on whether a prima facie case of discriminatory intent has been made or by requiring race-neutral reasons for the strikes.

....

        Similar to *Myers*, there is no obvious reason for the prosecutor's strikes in this case other than gender. The defendant has presented enough evidence to establish a prima facie case of purposeful discrimination based on the fact that the prosecutor struck six male jurors for no apparent reason, three of whom were backstruck after being accepted by the defense, with the resulting jury composed of eleven women and one man. These facts evidence a pattern of strikes against male jurors and a disparate impact on the final composition of the jury. Therefore, the trial court should have required the prosecutor to offer gender-neutral explanations for the strikes.

**Givens**, 98-3518 at 7-8, 776 So.2d at 450-51 (citations omitted).

        The instant case can be distinguished from **Givens**. While the State struck several potential African-American jurors in the instant case, it did not use any back strikes in the process. The record indicates specific information from answers to *voir dire* questions that the State could have used in its decision to exercise its peremptory challenges against the African-American jurors. Further, there is no evidence in the record of any pattern of strikes by the State against African-American jurors. In fact, the State accepted some African-American jurors who were then struck by defendant. Accordingly, this assignment of error lacks merit.[54]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[55]

        As correctly noted by the state court, claims of racial discrimination in jury selection are analyzed utilizing the three-step procedure established by the United States Supreme Court in

---

[54] State v. Williams, No. 2001 KA 0457, at pp. 6-8 (footnote omitted); State Rec., Vol. VII of VIII.

[55] State v. Williams, 836 So.2d 35 (La. 2003) (No. 2002-KO-0144).

Batson v. Kentucky, 476 U.S. 79 (1986).  In the first step, "the trial court must determine whether

the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge

on the basis of race."  Rice v. Collins, 546 U.S. 333, 338 (2006).  Here, the trial court found that

petitioner's claim failed at that first step.  The record reflects the following exchange:

> BY MR. SAUVIAC [defense counsel]:
> ... The State struck a total of four or five black jurors that have
> been struck by the state.
>
> BY THE COURT:
> You all have struck quite a few of them, too.
>
> BY MR. SAUVIAC:
> I just ask for reasons or nonrace reasons for their strike.
>
> BY THE COURT:
> I guess he has the right to ask you for yours.
>
> BY MR. MURRAY [the prosecutor]:
> At this point I think clearly there has not been any sort of
> pattern shown.  Would you still require under Batson – that comes
> after Batson – I'm using these purely for racial reasons.
>
> BY THE COURT:
> I don't think so.  The State agreed to quite a few black jurors
> and the defendant struck them, so I don't think there was any pattern
> at all.[56]

The challenge was then reurged the following day:

> BY MR. SAUVIAC:
> Yesterday, we brought up the issue of excluding black jurors
> in connection with voir dire and at that time we raised an objection
> at the bench and the matter was not dealt with.
>
> BY THE COURT:

---

[56]  State Rec., Vol. III of VIII, transcript of November 29, 1999, p. 152.

The matter was dealt with. I think I said that I did not believe the State was systematically excluding black potential jurors. In fact, I looked at the number of black jurors that the state had accepted, all of which were excluded by the defense and I will bring some of those out.

I probably can't remember all of them but the ones that I remember, Darryl Monk, Sammy Rogers, Eugene Sharp, Jacob Remy, I believe he was black. All of those were accepted by the State and challenged by the defense, so I don't know how you can say that the State was trying to systematically exclude black jurors.

BY MR. SAUVIAC:

There were three black jurors that we removed from the panel after they were accepted by the State. The State removed six jurors before we ever got a chance to rule upon those. Additionally, we've requested that they give a race neutral reason. We are prepared to give a race neutral reason on ours but they have not on the record given race neutral reasons for that.

BY THE COURT:

They're only required to do that if I find that there is a pattern. I can't say there was a pattern when they were willing to accept quite a few black jurors who were then excluded by the defendant, so we'll note your objection.

BY MR. SAUVIAC:

Thank you, Judge.[57]

Regarding the requirement that the defendant establish a *prima facie* case of

discrimination, the United States Supreme Court noted:

To establish such a case, the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the

---

[57] State Rec., Vol. III of VIII, transcript of November 30, 1999, pp. 3-4.

defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Batson, 476 U.S. at 96-97 (citations and quotation marks omitted).[58] The Supreme Court later

explained:

We did not intend the first step to be so onerous that a defendant would have to persuade the judge – on the basis of all the facts, some of which are impossible for the defendant to know with certainty – that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of Batson' s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.

Johnson v. California, 545 U.S. 162, 170 (2005).

Pursuant to Batson, the Court accepts "that peremptory challenges constitute a jury

selection practice that permits those to discriminate who are of a mind to discriminate." Batson, 476

U.S. at 96. Therefore, under Batson's first step, the Court need address only whether the relevant

---

[58] Batson's requirement that the defendant show that he was a member of a "cognizable racial group" and that the prosecutor had exercised peremptory challenges against members of his race was later eliminated in Powers v. Ohio, 499 U.S. 400 (1991).

circumstances raise an inference that the prosecutor used his peremptory challenges to strike African-American individuals on the basis of their race.  The state courts found that he did not, and, for the following reasons, this Court agrees.

In the instant case, there is no suggestion that circumstances other than a pattern of strikes arguably gave rise to an inference of discrimination.  Further, when the prosecutor's strikes are examined closely, no such inference arises on that basis.  Here, the prosecutor had available twelve peremptory challenges.  La.C.Cr.P. art. 799.  Of that number, he used only eight peremptory challenges, striking Jacqueline Adams, Essie Singleton, James Simmons, Kinte Wilson, Jerry Dyson, Tavula Adolph, Barbara Birch, and Harold Magee.  It appears that six of those eight individuals were African-Americans.[59]  It further appears that the state accepted at least three African-American jurors, although those individuals were subsequently struck by the defense.[60]  It is unclear how many, if any, African-Americans sat on the jury ultimately selected; however, for the purposes of this decision, the Court will assume that no African-Americans made it onto the jury.

If the Court were to focus on only the racial breakdown of the peremptory challenges actually exercised by the prosecutor, that figure alone would be troubling:  75% of those challenges were directed toward African-Americans.  However, the Court is not to focus on a single figure in isolation but instead must look to *all* of the relevant circumstances.  Here, the Court must also

---

[59]  Anticipating a <u>Batson</u> challenge, defense counsel conscientiously noted the race of the African-American jurors as they were struck.  State Rec., Vol. III of VIII, transcript of November 29, 1999, pp. 81-82 and 152-53.  Defense counsel did not identify Simmons and Birch as African-Americans and, therefore, the Court assumes for the purposes of this decision that they were not.

[60]  State Rec., Vol. III of VIII, transcript of November 30, 1999, p. 3.

consider that:  (1) at a minimum, there were nine African-Americans on the venire, of which the prosecutor accepted at least three (over 33%); and (2) the prosecutor left unused four (over 33%) of his allotted peremptory challenges, which he could have used to strike the remaining African-Americans on the venire if he were so inclined.  When considering those additional facts, which show that the prosecution was willing to accept a twelve-person jury with at least three African-Americans (25% representation), this Court cannot say that the state courts acted unreasonably in finding that the defense failed to show a pattern of strikes giving rise to an inference of discrimination so as to establish a *prima facie* case of discrimination.[61]

<u>Impeachment Limitation</u>

Petitioner's fifth claim is that the trial judge erred in refusing to allow the defense to impeach the credibility of one of the state's witnesses on cross-examination.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

---

[61]  The United States Fifth Circuit Court of Appeals has held that a "state court's determination that [a petitioner] failed to make a prima facie showing is a factual finding."  <u>Soria v. Johnson</u>, 207 F.3d 232, 238 (5th Cir. 2000).  Under the AEDPA, a federal court must defer to the state-court's factual finding that no prima facie case has been established unless petitioner demonstrates that the state court's conclusion "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>Price v. Cain</u>, Civ. Action No. 07-00937, 2008 WL 687189, at *6 (W.D. La. Jan. 4, 2008) (Hayes, M.J.) (adopted by James, J., on March 10, 2008).  Moreover, such state-court factual findings are *presumed* to be correct, and petitioner may be granted relief only if he rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>Soria</u>, 207 F.3d at 238.

This Court notes that other federal courts have held that the issue of whether a prima facie case has been established is a mixed question of law and fact subject to the standard in 28 U.S.C. § 2254(d)(1).  <u>Overton v. Newton</u>, 295 F.3d 270, 276 (2nd Cir. 2002).  Even if that standard were applicable, petitioner's claim would still fail because he has not demonstrated that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

[D]efendant argues that the trial court erred in refusing to allow him to impeach the State's eyewitness by showing bias. Specifically, defendant wanted to question the witness about pending criminal charges, which were reduced to lesser offenses prior to defendant's trial. The State contends that the jury was aware of the witness's pending criminal charges and that any questions regarding the circumstances of those pending charges were not allowed.

During the trial, Elvin Pigott testified on behalf of the State and explained that while outside the bar, he saw defendant point and shoot a gun. On cross-examination, defendant attempted to question Pigott about his pending criminal charges and a "deal" with the State. Pigott admitted that he had a pending probation revocation hearing based upon a violation involving a positive drug test. The State objected to this line of questioning. Defense counsel argued that he had previously filed a "motion to reveal the deal," but admitted he would be surprised if the State had reduced the "deal" to writing. Defense counsel proffered Pigott's testimony concerning his pending criminal charges. In his testimony, Pigott revealed the pending charges and denied any agreement or expectation of an agreement with the State in exchange for his testimony.

In **State v. Vale**, 95-1230 (La. 1/26/96), 666 So.2d 1070, the trial court ruled that in the absence of evidence of an explicit deal concerning a witness's pending charge, the witness's subjective expectations concerning the charge were irrelevant for purposes of cross-examination into his bias and interest in testifying for the State. The Louisiana Supreme Court granted certiorari and concluded:

> [T]he trial court's ruling ... conflicted with numerous decisions by this court that to the extent exposure of a witness's motivation is a proper and important function of the constitutionally protected right of cross-examination, a witness's "hope or knowledge that he will receive leniency from the state is highly relevant to establish bias or interest." *State v. Brady*, 381 So.2d 819, 822 (La. 1980) (collecting cases); see also *State v. Nash*, 475 So.2d 752, 755-56 (La. 1985). A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct. *Id*.

> **Vale**, 95-1230 at 4, 666 So.2d at 1072. The **Vale** court further found that the harmless error analysis was applicable where such relevant evidence of bias or interest had been excluded. **Vale**, 95-1230 at 5, 666 So.2d at 1072-73. Similarly, confrontation errors, such as improper limiting of questioning, are subject to the harmless error rule. **State v. Butler**, 30,798, p. 24 (La. App. 2 Cir. 6/24/98), 714 So.2d 877, 891, <u>writ denied</u>, 98-2217 (La. 1/8/99), 734 So.2d 1222.
>
> The proper analysis for determining harmless error is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." **Sullivan v. Louisiana**, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993) (emphasis in original). <u>See</u> **State v. Code**, 627 So.2d 1373, 1384-85 (La. 1993), <u>cert. denied</u>, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994).
>
> In addition to Pigott, there were several other witnesses who testified that they either saw defendant fire the shots that killed the victim or saw defendant with a gun in his hand moments before the shooting. Considering the admissible evidence identifying defendant as the shooter, we conclude that the guilty verdict in this case was surely unattributable to the lack of testimony regarding Pigott's possible bias. This assignment of error lacks merit.[62]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[63]

In this proceeding, the state argues that this claim should be rejected because it is founded purely on state law. This Court disagrees, because the claim also implicates petitioner's rights under the federal Confrontation Clause.

---

[62] <u>State v. Williams</u>, No. 2001 KA 0457, at pp. 6-8; State Rec., Vol. VII of VIII.

[63] <u>State v. Williams</u>, 836 So.2d 35 (La. 2003) (No. 2002-KO-0144).

The state alternatively argues that, in any event, there was no violation because Pigott testified during the proffer that he in fact had no deal or expectation of leniency for his testimony. For the following reasons, this Court again disagrees.

The United States Fifth Circuit Court of Appeals has held:

> A defendant's right to cross-examine fully the witnesses against him is one of constitutional dimensions, secured to federal defendants under the confrontation clause of the sixth amendment. <u>Alford v. United States</u>, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; <u>United States v. Morris</u>, 5 Cir. 1973, 485 F.2d 1385, 1386-87. State defendants have the right under the fourteenth amendment's due process clause. <u>Pointer v. Texas</u>, 1965, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination". <u>Davis v. Alaska</u>, 1974, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354.
>
> "[C]ross-examination of a witness in matters pertinent to his credibility ought to be given the largest possible scope". <u>United States v. Partin</u>, 5 Cir. 1974, 493 F.2d 750, 763, quoting McConnell v. United States, 5 Cir. 1968, 393 F.2d 404, 406. This is especially true where a prosecution witness has had prior dealings with the prosecution or with other law enforcement officials, so that the possibility exists that his testimony was motivated by a desire to please the prosecution in exchange for the prosecutor's actions in having some or all of the charges against the witness dropped, <u>United States v. Onori</u>, 5 Cir. 1976, 535 F.2d 938, securing immunity against prosecution for the witness, <u>United States v. Dickens</u>, 8 Cir. 1969, 417 F.2d 958, or attempting to assure that the witness receives lenient treatment in sentencing, <u>Beaudine v. United States</u>, 5 Cir. 1966, 368 F.2d 417.

<u>United States v. Mayer</u>, 556 F.2d 245, 248-49 (5th Cir. 1977). The Fifth Circuit further explained:

> [A] defendant's right to cross-examine a witness about any deals that may have been made or any understandings that may have been reached between the government and one of its witnesses does not hinge on whether *in fact* any such deals or understandings were effected. As this Court noted in <u>United States v. Onori</u>, 5 Cir. 1976, 535 F.2d 938, 945:

> The Sixth Amendment confrontation clause guarantees to a criminal defendant the right to cross-examine a witness against him .... This right is especially important with respect to accomplices or other witnesses who may have substantial reason to cooperate with the government .... Indeed, it is so important that the defendant is allowed to 'search' for a deal between the government and the witness, even if there is no hard evidence that such a deal exists .... *What tells, of course, is not the actual existence of a deal but the witness' belief or disbelief that a deal exists.* (emphasis added).

> Accord United States v. Dickens, 8 Cir. 1969, 417 F.2d 958, 960-61; Sandroff v. United States, 6 Cir. 1946, 158 F.2d 623, 629, cert. denied, 1950, 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584; Farkas v. United States, 6 Cir. 1924, 2 F.2d 644, 647.

Mayer, 556 F.2d at 249-50.  Moreover, the Fifth Circuit has noted:

> What counts is whether the witness may be shading his testimony in an effort to please the prosecution. A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception.

Greene v. Wainwright, 634 F.2d 272, 276 (5th Cir. 1981) (quotation marks omitted); see also

Carrillo v. Perkins, 723 F.2d 1165, 1169-70 (5th Cir. 1984).  Accordingly, "the crucial factor is

whether the jury might have been persuaded that [the witness's] vulnerability to prosecution made

him wish to assist the state and that this motivation compromised his credibility." Carrillo, 723 F.2d

at 1170.

   In the instant case, Pigott testified during the proffer that, shortly before the instant

trial, he pleaded guilty to a charge of battery on a police officer and received a five year sentence

with four years of that sentence being suspended.[64]   He further testified that he had also been

arrested on other charges which were still pending at the time of this trial and that he faced a

possible probation revocation.[65]   Although Pigott stated that he anticipated no deals with the

prosecution on those matters,[66] the Court finds that, under the federal Confrontation Clause, the

defense should have been permitted to explore these pending criminal matters fully and cross-

examine Pigott regarding any deals, expectations, or *motivations* he might have as result of them.

      That said, the United States Fifth Circuit Court of Appeals has also held:

> Confrontation Clause violations are subject to harmless error
> analysis.  In Brecht v. Abrahamson, the Supreme Court addressed the
> issue of harmless error in the context of collateral review and
> determined that "habeas petitioners ... are not entitled to habeas relief
> based on trial error unless they can establish that it resulted in 'actual
> prejudice.'"  507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353
> (1993) (citation omitted).  The test, which the court adopted from
> Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.
> 1557 (1946), is "whether the error 'had substantial and injurious
> effect or influence in determining the jury's verdict.' " Id. (quoting
> Kotteakos, 328 U.S. at 776, 66 S.Ct. 1239).  The Brecht standard
> requires an examination of the entire record, "so as to fully consider
> *all* the ways in which the complained-of error could have infected the
> course of the ... trial." Cupit v. Whitley, 28 F.3d 532, 538 n. 18 (5th
> Cir. 1994) (emphasis in original).

Fratta v. Quarterman, 536 F.3d 485, 507-08 (5th Cir. 2008).

      The state court found that any error regarding the limitations on the cross-

examination and impeachment of Pigott were harmless, noting that numerous other witnesses

---

[64]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, pp. 52-53.

[65]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, pp. 53-54 and 56-57.

[66]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, pp. 57-58.

testified that they either saw petitioner fire the fatal shots or saw him with a gun in his hand moments before the shooting.  Citing that other admissible identification evidence, the state court concluded that "the guilty verdict in this case was sure unattributable to the lack of testimony regarding Pigott's possible bias."[67]  This Court agrees and therefore finds that trial court's Confrontation Clause error did not have a substantial and injurious effect or influence in determining the jury's verdict.  Accordingly, under Brecht, the error should be deemed harmless and the claim should be denied.

<u>Judge's Comments and Related Claims</u>

Petitioner's sixth claim is that the trial judge erred in making a disparaging comment, in the presence of the jury, regarding her opinion of the state's evidence.  His related seventh and eighth claims are that the trial judge erred in denying the defense motions for mistrial and new trial based on the comment.  On direct appeal, the Louisiana First Circuit Court of Appeal denied those claims, holding:

> Defendant specifically argues that the comment occurred during the cross-examination of one of the State's witnesses, Latorious Levy. Defense counsel was questioning Levy about her statement to the sheriff's office that she *heard* defendant was the shooter; Levy's testimony on direct examination was that she saw defendant, wearing a hooded jacket and holding a gun, walking around the outside of the bar before the shooting started.  The pertinent part of the colloquy during Levy's cross-examination is as follows:
>
> Q.  You've given a statement July 11, 1998; is that correct, to the Sheriff's Office?
>
> A.  Yes, sir.

---

[67] <u>State v. Williams</u>, No. 2001 KA 0457, at p. 8; State Rec., Vol. VII of VIII.

Q.  I ask if you would go to page five.  You remember officer Penton interviewing you with the Sheriff's Office?

A.  Yes, sir.

Q.  He asked a question about three quarters of the way down, he asked absolutely, positively that Shank was the one that shot you.  Do you see that question, ma'am?

A.  Yes, I see it.

Q.  And you gave an answer to him, is that correct?

A.  Yes, sir.

Q.  What was your answer?

A.  That's what I heard.

Q.  I'm sorry?

A.  That's what I heard.

Q.  Your answer to that question is you are absolutely positive that Shank was the one that shot.  That's what I heard; is that correct?

A.  Yes, sir.

BY MR. SAUVIAC:
        No further questions of this witness.

BY THE COURT:
        That's incomplete.  I don't think we can take that question out of context here.

BY MR. MURRAY:
        I think that he said that's all he had.

Later after other witnesses testified, defendant made a motion for mistrial based upon the trial court's comment. The trial court denied the motion as follows:

BY MR. SAUVIAC:
For the record, we're out of the presence of the jury. During the questions on cross-examine of Latorious Levy I asked her questions. At the conclusion when I did that the Court had directed or made a comment she couldn't – I'm not sure exact –

BY THE COURT:
It was out of context.

BY MR. SAUVIAC:
It was made in court in front of the jury and I didn't, of course, this is in front of the jury, want to exacerbate that issue but I do at this time object and move for a mistrial in that light or alternatively and I don't know that could be corrected with instruction, by instruction to the jurors. That comment, I guess –.

BY THE COURT:
I think that's in my jury instructions. I don't think it prejudiced your jury. I think Mr. Murray came back and took care of it. So we will note your objection for the record.

MR. SAUVIAC:
The mistrial is denied?

BY THE COURT:
Yes.

Under La. Code Crim. P. art. 722, the trial court is prohibited, in the presence of the jury, from commenting upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted. This article does not apply to the trial court's reasons for rulings on objections, provided the remarks are not unfair or prejudicial to defendant. Moreover, a trial court's comments on the evidence have been held to be harmless

error if those remarks do not imply an opinion as to the defendant's guilt or innocence. **State v. Bennett**, 2000-0282, pp. 4-5 (La. App. 1 Cir. 11/8/00), 771 So.2d 296, 298-99. It is well settled that a verdict will not be set aside because of improper remarks by the trial court unless the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. **State v. Pooler**, 96-1794, pp. 17-18 (La. App. 1 Cir. 5/9/97), 696 So.2d 22, 37, <u>writ denied</u>, 97-1470 (La. 11/14/97), 703 So.2d 1288.

Here, defendant argues that because the evidence of his guilt is not strong and the trial court refused to give an admonition, the comment was prejudicial. We disagree. Although the trial court's remark was, perhaps, inappropriate, it was neither unfair nor prejudicial to defendant; nor did it imply an opinion as to defendant's guilt or innocence. The trial court's comment did not directly or indirectly refer to the defendant and did not amount to an expression of opinion by the trial court regarding the defendant's guilt and, therefore, does not constitute reversible error. A mistrial is a drastic remedy that should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. **Bennett**, 2000-0282 at 5, 771 So.2d at 299. Thus, we conclude that the trial court correctly denied defendant's motion for mistrial. These assignments lack merit.[68]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[69]

A more extensive review of Levy's testimony is necessary to understand the context of the judge's comment. On direct examination, Levy testified that (1) she saw petitioner with a

---

[68] <u>State v. Williams</u>, No. 2001 KA 0457, at pp. 8-11; State Rec., Vol. VII of VIII.

[69] <u>State v. Williams</u>, 836 So.2d 35 (La. 2003) (No. 2002-KO-0144).

gun,[70] (2) she was shot,[71] and (3) she did not actually *see* petitioner or anyone else fire a gun.[72]  On cross-examination, defense counsel questioned Levy about the fact that, in her statement to Officer Penton, she had stated that she knew it was petitioner who shot her because that was what she had "heard."[73]  At that point, the trial judge interjected:  "That's incomplete.  I don't think we can take that question out of context here."[74]  On redirect examination, Levy stated that, after she made that comment in her statement, the officer asked what she had actually *seen*, not heard, and she responded that she had seen Travon and Shank and that Shank fired the shot.[75]

This Court agrees that the trial judge should have waited for the prosecutor to revisit the issue on redirect examination to resolve any contextual issues regarding Levy's comment in the prior statement.  Therefore, like the state court, this Court finds that the trial judge's comment was arguably inappropriate.  Nevertheless, for the following reasons, the Court also finds that petitioner is not entitled to relief based on the judge's comment.

The United States Fifth Circuit Court of Appeals has noted:

We have held:

> [O]ur role is to determine whether the judge's behavior was so prejudicial that it denied the

---

[70]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, pp. 69 and 71-72.

[71]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, pp. 71 and 74.

[72]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, pp. 69 and 71.

[73]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, pp. 75-76.

[74]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, p. 76.

[75]  State Rec., Vol. IV of VIII, transcript of December 1, 1999, pp. 76-77.

> > defendant a fair, as opposed to a perfect, trial.  To rise
> > to the level of a constitutional error, the ... judge's
> > actions, viewed as a whole, must amount to an
> > intervention that could have led the jury to a
> > predisposition of guilt by improperly confusing the
> > functions of judge and prosecutor.   The judge's
> > intervention in the proceedings must be quantitatively
> > and qualitatively substantial to meet this test.
>
> United States v. Bermea, 30 F.3d 1539, 1569 (5th Cir. 1994)
> (citations omitted).  Therefore, our review of this issue must focus on
> matters such as the context of the remarks, to whom the remarks were
> directed, the number and nature of the remarks, and the presence of
> curative instructions.  United States v. Munoz, 150 F.3d 401, 414 (5th
> Cir. 1998).

Evans v. Cockrell, 285 F.3d 370, 376 (5th Cir. 2002); see also Cotton v. Cockrell, 343 F.3d 746, 754

(5th Cir. 2003) ("The conduct of a judge violates due process only if the judge appears to predispose

the jury toward a finding of guilt or to take over the prosecutorial role.") (internal quotation marks

omitted); Derden v. McNeel, 978 F.2d 1453, 1459 (5th Cir. 1992) (finding that the trial judge's

comments, though "ambiguous or imprudent," did not deny petitioner due process).

     In the instant case, a review of the pertinent factors establishes that the judge's

comment did not deny petitioner's right to due process.  First, this was solitary and fleeting comment

in a lengthy trial.  Second, the comment was directed to counsel, not the jury.  Third, the comment

cannot fairly be construed as one concerning petitioner's guilt or innocence.  Fourth, the jurors were

given appropriate curative instructions,[76] and there is no basis for concluding that they disregarded those instructions.

In summary, the Court finds that petitioner has failed to demonstrate that the state court's decision rejecting his claim concerning the comment was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

Petitioner's next two related claims, i.e. that the trial judge erred in denying petitioner's motions for mistrial and new trial based on that comment, are likewise without merit for the following reasons.

To the extent that petitioner is arguing that the state court erred in applying the state laws concerning the granting or denial of motions mistrial or new trial, such a claim is not cognizable in a federal *habeas corpus* proceeding. "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'" Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of

---

[76] The jury was instructed:

> If I have given you the impression that I have an opinion regarding any fact in this case, you are to disregard that impression. If I have given you the impression that I have an opinion concerning the guilt or innocence of the defendant, you are to disregard that impression.

State Rec., Vol. VI of VIII, transcript of December 2, 1999, p. 206.

its own law in a federal habeas corpus proceeding.  We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law.") (internal citation and quotation marks omitted).   Therefore, even if the state courts in fact misapplied state law, that would be of no moment in this proceeding.  Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983); Thomas v. Ieyoub, No. 93-3757, 1994 WL 286198, at *2 (5th Cir. June 22, 1994) ("[E]rrors of state law, such as a denial of a mistrial, must rise to a constitutional dimension in order to merit habeas relief."); Smith v. Whitley, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994) ("Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance."); Richthofen v. Cain, Civ. Action No. 05-5701, 2008 WL 630477, at *32 (E.D. La. Mar. 7, 2008) ("To the extent that petitioner is arguing that the state courts misapplied the applicable state laws regarding the granting of new trials, petitioner would not be entitled to federal *habeas corpus* relief based on any such error."); Alvarez v. LeBlanc, Civ. Action No. 05-888, 2006 WL 2054643, at *12 (E.D. La. July 19, 2006) (same).

Moreover, there is no basis for finding that petitioner's *federal* constitutional rights were violated by the denial of the motions for mistrial or new trial.  The denial of such a motion

justifies federal habeas corpus relief only if it was error so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.  In order to obtain relief, [the petitioner] must show that the trial court's error had a substantial and injurious effect or influence in determining the jury's verdict.  [The petitioner] must show that there is more than a mere reasonable possibility that [the

> error] contributed to the verdict.  It must have had a substantial effect
> or influence in determining the verdict.

Hernandez v. Dretke, 125 Fed. App'x 528, 529 (5th Cir. 2005) (internal citations, quotation marks,

and ellipsis omitted); see also Marshall v. Stadler, Civ. Action No. 92-0886, 1992 WL 370047, at

*4 (E.D. La. Dec. 4, 1992).

Given the overall strength of the prosecution's case and the jury instructions,

petitioner has not shown that the judge's comment had a substantial and injurious effect in

determining the jury's verdict.  Accordingly, this Court concludes the denial of the motions for

mistrial and new trial did not violate petitioner's federal constitutional right to due process.

### Prosecutor's Argument

Petitioner's final claim is that the trial judge erred in denying petitioner's motion for

mistrial and new trial based on the prosecutor's improper argument.  On direct appeal, the Louisiana

First Circuit Court of Appeal denied that claim, holding:

> [D]efendant argues that the trial court erred in denying his motion for
> mistrial based upon the prosecutor's improper rebuttal argument.
> Defendant argues that the prosecutor specifically referred to hearsay
> statements in a police report, evidence that the trial court had ruled
> was inadmissible.  The State notes that the defendant objected but did
> not ask for a mistrial or admonition.  The State also argues that the
> references were not outside the evidence presented at trial and did not
> warrant reversing the conviction.
>
> During his direct examination, defendant was questioned
> about and described the circumstances surrounding his California
> arrest for discharge of a firearm offense and his subsequent no contest
> plea.  During the State's cross-examination of defendant, the
> prosecutor asked defendant to identify a police report concerning this
> California offense.  Defendant objected, and the trial court ruled that
> the police report, if not authenticated, was not admissible unless
> defendant identified the report.  The prosecutor then asked defendant
> to review and identify the police report.  Defendant testified that the

report described the charge for which he was arrested, but it did not "describe the true facts." Defendant continued to answer that the report and the charges were false.

During the State's rebuttal argument, the prosecutor referred to the police report of the California offense. The defense attorney objected to the argument on the basis that the prosecutor was "giving testimony to things that are not in evidence." The trial court, in overruling the objection, found that the prosecutor merely stated what defendant had said during his testimony.

According to La. Code Crim. P. art. 774, argument must be confined to the evidence or lack thereof, the conclusions that may be inferred, and the applicable law. This article also prohibits an appeal to prejudice. Louisiana Code of Criminal Procedure article 771 provides that upon request, the court shall admonish the jury to disregard an irrelevant, immaterial, or potentially prejudicial remark made in the presence of the jury or grant the defendant's motion for a mistrial if warranted.

Upon review of the closing argument and defendant's testimony, we agree with the trial court that the prosecutor's closing argument accurately referred to defendant's testimony. Moreover, the State is correct that defense counsel neither moved for a mistrial nor requested an admonition. Accordingly, we find no merit to these arguments of error.[77]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[78]

At trial, petitioner, on direct examination, gave a detailed recitation of the facts leading to his arrest on the prior offense in California.[79] On cross-examination, petitioner conceded that the police report gave a different account of the facts but stated that "[t]he facts that are in this

---

[77] State v. Williams, No. 2001 KA 0457, at pp. 11-12; State Rec., Vol. VII of VIII.

[78] State v. Williams, 836 So.2d 35 (La. 2003) (No. 2002-KO-0144).

[79] State Rec., Vol. VI of VIII, transcript of December 2, 1999, pp. 64-70.

report is false."[80]   Based on that testimony, the prosecutor then argued that defense counsel was

trying to "misdirect" the jury by shifting the focus to alleged mistakes made during the investigation

of the instant crime, and he further argued that petitioner had tried a similar ploy when opining that

he was not actually guilty of the California offense.   In making that argument, the prosecutor

recounted petitioner's version of the events leading to that arrest.   Defense counsel objected, on the

basis that the prosecutor was attempting to give testimony on matters not in evidence.   The trial

judge implicitly overruled that objection, correctly noting that the prosecutor had done nothing more

than summarize petitioner's testimony on direct and cross-examination.[81]   Defense counsel did not

move for mistrial.

> For several reasons, it is evident that there is no merit to petitioner's claim that the
trial judge erred in denying motions for mistrial and new trial based on the prosecutor's improper
argument.   First, as noted, defense counsel did not move for mistrial based on the comment.   Second,
the prosecutor accurately summarized petitioner's testimony and, therefore, neither a  mistrial nor
a new trial was warranted based on the rebuttal argument.   Third, the jury was accurately instructed
that the prosecutor's argument was not be considered as evidence.[82]   Fourth, as noted previously in
this opinion, even if a mistrial or new trial had been warranted, any claim that the state court
misapplied *state law* concerning the granting or denial of motions mistrial or new trial simply is not
cognizable in a federal *habeas corpus* proceeding.   Fifth, even if the prosecutor's arguments were

---

[80]   State Rec., Vol. VI of VIII, transcript of December 2, 1999, p. 86.

[81]   State Rec., Vol. VI of VIII, transcript of December 2, 1999, pp. 195-97.

[82]   See *supra* note 45.

improper and a motion for mistrial or new trial should have been granted as a result, petitioner's *federal* constitutional rights were not violated because, given the overall strength of the prosecution's case and the jury instructions, there is no basis for finding that the error had a substantial and injurious effect in determining the jury's verdict.[83]

<u>Cumulative Error</u>

Although he does not list it as a separate ground for relief, petitioner concludes his supplemental memorandum by requesting that the Court review the effect of the cumulative errors in this case.[84]  The United States Fifth Circuit Court of Appeals initially expressed its disfavor of such claims in federal *habeas corpus* proceedings.  For example, in one case, the Fifth Circuit noted:

> [Petitioner] finally asserts that even if none of his claims entitles him to relief individually, all of them collectively, do.  Habeas relief is available only where a prisoner is in custody in violation of the Constitution or of federal law.  28 U.S.C. § 2254.  [Petitioner] cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit.  We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero.

---

[83]  Out of an abundance of caution, the Court further notes that petitioner also references in his claim an earlier successful objection during the trial to the prosecutor's attempt to introduce a statement of a deceased person.  Rec. Doc. 26, p. 15 (06-0224); Rec. Doc. 8, p. 15 (06-0344); State Rec., Vol. VI of VIII, transcript of December 2, 1999, pp. 127-32.  After the objection was sustained, defense counsel requested neither an admonition nor mistrial.  Accordingly, the trial court granted the only relief requested by the defense.  It is unclear why petitioner references that objection with respect to this claim, in that the prosecutor does not appear to refer to that statement in his closing argument.

[84]  Rec. Doc. 26, p. 16 (06-0224); Rec. Doc. 8, p. 16 (06-0344)

Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).   Nevertheless, the Fifth Circuit subsequently recognized such claims, albeit in a strictly narrow set of circumstances.   The Fifth Circuit noted:

> In Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992), cert. denied, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993), the en banc court recognized an independent claim based on cumulative error only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" Id., quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).  Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised.  Derden, 978 F.2d at 1461.

Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996); see also Jackson v. Johnson, 194 F.3d 641, 655 n.59 (5th Cir. 1999) ("The cumulative error doctrine provides relief only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.").

In the instant case, the individual claims asserted by petitioner have no merit and, therefore, he is not entitled to relief merely by cumulating those claims, especially when, as here, the cumulative effect of the alleged errors cannot be said to have fatally infected the fundamental fairness of the trial.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this seventeenth day of February, 2009.

**LOUIS MOORE, JR.**
**UNITED STATES MAGISTRATE JUDGE**